UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 1:16-CR-057 |
| | ) | |
| THOMAS LEBRON HUGHES | ) | |

### MEMORANDUM AND ORDER

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i) and for appointment of counsel, along with a memorandum in support. [Docs. 70, 71].[1] The United States has responded in opposition the motion [docs. 72, 77], and the defendant has submitted two reply briefs and a letter of support. [Docs. 78-80].

The matter is now ripe for the Court's consideration. For the reasons that follow, the defendant's motion will be denied.[2]

### I. BACKGROUND

In May 2017, the Honorable Harry S. Mattice, Jr., sentenced the defendant to a net term of 166 months' imprisonment for attempted carjacking and for discharge of a firearm during and in relation to a crime of violence. The defendant is presently housed at USP Terre Haute with a projected release date of January 22, 2028. *See* Bureau of Prisons,

---

[1] An earlier *pro se* motion for compassionate release and for appointment of counsel [doc. 63] was denied in relevant part, with leave to renew, by the Honorable Travis R. McDonough for failure to exhaust administrative remedies. [Doc. 66].

[2] The defendant's *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 [doc. 68] remains pending before the Court.

https://www.bop.gov/inmateloc/ (last visited May 10, 2021). He now moves for compassionate release due to the COVID-19 pandemic, hepatitis C, kidney problems, breathing problems, obesity, family concerns, and his rehabilitative efforts (which he deems "nothing short of remarkable").[3]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant

---

[3] The defendant also raises arguments pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district. Additionally, the defendant raises arguments also found in, and more appropriately presented in, his 2255 petition which, as noted, remains pending before the Court.

2

Case 1:16-cr-00057-RLJ-SKL   Document 82   Filed 05/13/21   Page 2 of 10   PageID #: 592

to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[4] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 71]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hepatitis C, kidney problems, breathing problems, obesity, family concerns, and

---

[4] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

his rehabilitative efforts. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution there are currently no inmates or staff positive for COVID-19, with 714 inmates and 19 staff having recovered (including the defendant [doc. 77]), and two inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 10, 2021). Historically, these numbers are not insignificant, but the Court simultaneously notes that outside the prison setting our nation faces an ongoing crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release[.]"). Additionally, at the defendant's correctional complex, 1,293 inmates and 286 staff have been thus far been fully vaccinated against COVID-19. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 10, 2021).

The BOP's SENTRY Report categorizes the defendant as Care Level 1 in terms of both physical and mental health. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited May 10, 2021).

Nonetheless, obese persons [body mass index ("BMI") of at least 30] and overweight persons (BMI greater than 25 but less than 30) "can" be more likely to become severely ill from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 10, 2021). The higher the BMI, the greater the risk. *Id.*

As of October 26, 2020, the defendant weighed 216.4 pounds. [Doc. 71]. According to his Presentence Investigation Report ("PSR"), the defendant is 70 inches tall. [Doc. 43, ¶ 79]. Those numbers convert to a BMI of 31. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited May 10, 2021). The defendant is therefore obese.

The United States concedes that "this Court could plausibly find that Hughes's obesity constitutes an extraordinary and compelling reason for release in light of the current

6

Case 1:16-cr-00057-RLJ-SKL   Document 82   Filed 05/13/21   Page 6 of 10   PageID #: 596

pandemic." [Doc. 72, p. 10, 13]. Accordingly, *for purposes of the instant motion only*, the Court finds that the defendant has shown extraordinary and compelling reasons for compassionate release.

The defendant must next show that his release would be consistent with the 18 U.S.C. § 3553(a) factors. In the present case, the defendant attempted to carjack a hair salon patron's motorcycle. [Doc. 43, ¶¶ 7-13]. The defendant

> pulled out a firearm and pointed it at the victim and barber. The defendant forced the victim and barber to get down on their knees and he pointed the firearm at them. The defendant demanded the victim's keys to the motorcycle. The defendant also demanded the victim and barber's cellular phones.

[*Id.*, ¶ 9]. A struggle ensued, during which the defendant twice discharged his gun. [*Id.*, ¶¶ 10, 13]. The defendant left with a victim's phones and a motorcycle helmet, but not the motorcycle itself. [*Id.*, ¶ 10]. He then stole a pickup truck and fled. [*Id.*, ¶ 15].

One of the victims wrote, "I suffer from depression and anxiety. Due to the trauma of the attack, I seldom wanted to leave home and lived in constant fear until [the defendant] was apprehended. My mother, and family, shared my fears." [*Id.*, ¶ 16]. The victim further reported that, "[a]s a result of the struggle with the assailant, Thomas Lebron Hughes, my hand/wrist had glass embedded in it. I now have constant reminders, scars, of the day that man tried to kill me." [*Id.*].

This case is not the defendant's first encounter with the criminal justice system. He was 31 years old when sentenced by Judge Mattice and had already accrued an astounding 24 countable criminal history points. [*Id.*, ¶¶ 56, 76]. There are prior convictions for assault (twice), drug offenses, theft, introduction of contraband into a penal institution, auto burglary, aggravated burglary, and reckless endangerment (in which the defendant pulled

a knife on a store employee). [*Id.*, ¶¶ 37-44, 46-49, 51, 53]. There have been multiple violations of probation. [*Id.*, ¶¶ 41-44, 47-49]. At the time of sentencing, the defendant's pending state charges included fraud, aggravated assault, reckless endangerment, and vandalism (allegedly shattering a kiosk screen at the Hamilton County Jail). [*Id.*, ¶¶ 58, 60-61]. There are also two prior domestic violence convictions. [*Id.*, ¶¶ 65, 67]. According to the Tennessee Department of Corrections, the defendant is a member of the Aryan Nation although, according to the PSR, the defendant "reported he is no longer an active member of this gang." [*Id.*, ¶ 74]. The defendant also reports a substance abuse history dating back to age 12. [*Id.*, ¶ 79].

The defendant asks the Court to look to his post-sentencing conduct rather than his background. SENTRY shows that the defendant has completed numerous brief educational courses. Presumably, he would have completed more but for COVID-related lockdown restrictions. The Court has considered the letters of support filed by the defendant [docs. 71, 79] and the rehabilitative intentions described at length in his filings.

Conversely, the Court must note that the defendant has incurred five disciplinary sanctions while incarcerated. Three of those have been for fighting, and one of those three involved possession of a dangerous weapon. The defendant states that all three fights were initiated by others. Regardless, in his April 27, 2021 SENTRY Report, the BOP categorizes him as a high security inmate with a high risk of recidivism.

The Court appreciates the rehabilitative intentions expressed by the defendant, and he is encouraged to remain on that path. The Court also recognizes that the defendant has some physical health issues. Those points, however, are substantially outweighed by the

8

defendant's significant and dangerous criminal history. Further, more than 80 months of actual time remain on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

Compassionate release on these facts would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes. The pending compassionate release motion will accordingly be denied.

### III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointed counsel, there is no constitutional right to an attorney in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of

Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET has filed notice that, after a review of the defendant's case, it does not intend to submit any pleadings. [Doc. 69].

### IV.  CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release and for the appointment of counsel [doc. 70] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge
